**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Randy Nichols; Bonnie L. Nichols; Robby Nichols; Jaci Nichols; Rick Nichols; Jerry Nichols; Debbie Nichols; and Kimberly J. Vachal, Trustee of the Ron Nichols and Sue Nichols Family Mineral Trust UTD March 20, 2008, | ) ) ) ) ) ) ) | |
| | ) | **ORDER DENYING DEFENDANTS'** |
| Plaintiffs, | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| vs. | ) | |
| | ) | |
| Satkin Corporation; Ben G. Barnett; JP Morgan Chase Bank NA and Gary Q. Ward, Trustees of the Ben Barnett Foundation; Joe A. Worsham; Bess J. Craftan; and All other persons unknown, claiming any estate or interest in or lien or encumbrance upon the property described in the complaint including any heir, devisee, legatee or personal representative of any of the above named person who may be deceased or under any other title or interest, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 4:09-cv-028 |
| | ) | |
| Defendants. | ) | |

___

| | | |
|---|---|---|
| Robby Nichols and Jaci Nichols, | ) | |
| | ) | **ORDER DENYING DEFENDANTS'** |
| Plaintiffs, | ) | **MOTION FOR SUMMARY** |
| | ) | **JUDGMENT** |
| vs. | ) | |
| | ) | |
| Satkin Corporation, et al., | ) | Case No. 4:09-cv-029 |
| | ) | |
| Defendants. | ) | |

Before the Court is the Defendants'[1] motion for summary judgment filed on April 1, 2010. See Case No. 4:09-cv-028, Docket No. 18; Case No. 4:09-cv-029, Docket No. 17. The Plaintiffs filed a response in opposition to the motion on May 3, 2010. See Case No. 4:09-cv-028, Docket No. 28; Case No. 4:09-cv-029, Docket No. 27. The Defendants filed a reply brief on May 17, 2010. See Case No. 4:09-cv-028, Docket No. 34; Case No. 4:09-cv-029, Docket No. 33. For the reasons set forth below, the Defendants' motion for summary judgment is denied.

## I.   BACKGROUND

The Plaintiffs are residents of North Dakota and own the surface interest in certain real property in Mountrail County, North Dakota. Defendant Satkin Corporation is a Texas corporation with its principal place of business in Fort Worth, Texas. Defendant Ben G. Barnett is deceased. Defendant JP Morgan Chase Bank, NA is a national banking association organized under the laws of the United States with its principal place of business in New York, New York. The Dallas, Texas office of JP Morgan Chase Bank, NA is the co-trustee of the Ben G. Barnett Foundation. Defendant Gary Q. Ward is a trust officer of JP Morgan Chase Bank, NA. Defendant Joe A. Worsham is deceased.

The only differences between Case Nos. 4:09-cv-028 and 4:09-cv-029 are that (1) two of the plaintiffs involved in the former, Robby Nichols and Jaci Nichols, are the sole plaintiffs in the latter,

---

[1] For purposes of this order, when referencing "the Defendants" the Court is referring to all of the defendants except Defendant Bess. J. Craftan. All of the defendants, except Craftan, are represented by the same attorney and are defending the actions together. Craftan has not appeared nor filed an answer to the complaint. On May 7, 2010, the Court issued an "Order Denying Plaintiffs' Motion for Default Judgment" against Craftan. See Case No. 4:09-cv-028, Docket No. 32; Case No. 4:09-cv-029, Docket No. 31. The Court found that Craftan was not properly served with the summonses and complaints and ordered that service on Craftan be made no later than June 30, 2010.

and (2) the real property in dispute. The plaintiffs in Case No. 4:09-cv-028 claim an interest in the real property described as:

> Township 154 North, Range 89 West of the 5th PM
> Section 19: SE/4
> Section 20: SE/4, W/2

The plaintiffs in Case No. 4:09-cv-029 claim an interest in the real property described as:

> Township 154 North, Range 89 West of the 5th PM
> Section 20: SW1/4

In the 1950's and 1960's, Satkin Corporation, Joe A. Worsham, and Ben G. Barnett acquired mineral acres in certain properties in Mountrail County, North Dakota in which the Plaintiffs currently own the surface interest. In 1983, the North Dakota Legislative Assembly adopted the Dormant Minerals Act, N.D.C.C. chapter 38-18.1. The Dormant Minerals Act provides that any mineral interest is deemed to be abandoned if the mineral interest has been unused for a period of twenty years and no statement of claim has been properly recorded. N.D.C.C. § 38-18.1-02. The abandoned mineral interest vests in the surface owner. In 1985, Satkin Corporation filed a statement of claim in the Mountrail County Recorder's Office.

In 2005, Randy Nichols hired Connie Longmuir of Mountrail County Abstract to complete a title report on the SE1/4 of Section 19 and the NW1/4 and S1/2 of Section 20. Robby Nichols later hired Longmuir to prepare an ownership report on the SW1/4 of Section 20. The title reports listed numerous mineral owners which include: "BEN G. BARNETT (12-1-50), Dallas, TX", "JOE A. WORSHAM (6-23-52), 502 Dallas National Bldg, Dallas, TX", and "SATKIN CORPORATION (6-20-85), 1200 Interfirst Forth Worth Bldg, 500 W. 7th St Ft. Worth, TX 76102." See Case No. 4:09-cv-028, Docket No. 19-1, pp. 18-22; Case No. 4:09-cv-029, Docket No. 18-1, pp. 18-22.

The Nichols hired an attorney, Wade Enget, to assist them in terminating the severed mineral interests under the North Dakota Dormant Minerals Act. Enget published a Notice of Termination three times in the Mountrail County Reporter as required by statute. In addition, he sent a Notice of Lapse of Mineral Interest to Barnett and Worsham in May 2005 and to Satkin Corporation in February 2006 at the addresses shown on the title reports. The notices that were mailed to Barnett and Worsham were undelivered and stamped "RETURN TO SENDER ATTEMPTED NOT KNOWN." See Case No. 4:09-cv-028, Docket No. 19-1, pp. 24, 26; Case No. 4:09-cv-029, Docket No. 18-1, pp. 24, 26. The notice sent to Satkin Corporation was also undelivered and stamped "RETURN TO SENDER NOT DELIVERABLE AS ADDRESSED UNABLE TO FORWARD." See Case No. 4:09-cv-028, Docket No. 19-1, p. 27; Case No. 4:09-cv-029, Docket No. 18-1, p. 27.

On May 18, 2009, the Plaintiffs filed complaints in two separate actions in state court in Mountrail County, North Dakota. See Case No. 4:09-cv-028, Docket No. 1-1; Case No. 4:09-cv-029, Docket No. 1-1. On June 9, 2009, the Defendants removed the actions to federal district court. See Case No. 4:09-cv-028, Docket No. 1; Case No. 4:09-cv-029, Docket No. 1. The Plaintiffs seek quiet title of the real properties' mineral acres. The Defendants contend that the Plaintiffs failed to comply with the notice requirements of the North Dakota Dormant Minerals Act and also seek quiet title of the mineral acres.

**II.     STANDARD OF REVIEW**

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d

648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party.

The Court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to the fact-finder or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the burden of demonstrating an absence of a genuine issue of material fact. Simpson v. Des Moines Water Works, 425 F.3d 538, 541 (8th Cir. 2005). The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

This action is based on diversity jurisdiction. Therefore, the Court will apply the substantive law of North Dakota. See Paracelsus Healthcare Corp. v. Philips Med. Sys., Nederland, B.V., 384 F.3d 492, 495 (8th Cir. 2004).

## III.   LEGAL DISCUSSION

The North Dakota Dormant Minerals Act, N.D.C.C. chapter 38-18.1, provides that a surface owner may terminate the ownership of a severed mineral interest if the mineral interest has been unused for a period of twenty years and no statement of claim has been properly recorded. N.D.C.C. § 38-18.1-02. Section 38-18.1-06 of the North Dakota Century Code in 2005 and 2006 stated:

> 1. Any person intending to succeed to the ownership of a mineral interest upon its lapse shall give notice of the lapse of the mineral interest by publication.

> 2. The publication provided for in subsection 1 must be made once each week for three weeks in the official county newspaper of the county in which the mineral interest is located; however, if the address of the mineral interest owner is shown of record or can be determined upon reasonable inquiry, notice must also be made by mailing a copy of the notice to the owner of the mineral interest within ten days after the last publication is made.
>
> 3. The notice must state:
>
>> a. The name of the record owner of the mineral interests;
>>
>> b. A description of the land on which the mineral interest involved is located; and
>>
>> c. The name of the person giving the notice.
>
> 4. A copy of the notice and an affidavit of service of the notice must be recorded in the office of the recorder of the county in which the mineral interest is located and constitutes prima facie evidence in any legal proceedings that such notice has been given.

N.D.C.C. § 38-18.1-06 (2005). Several amendments to the statute have occurred since 2006, most notably the addition of subsection (5) in 2007 and subsection (6) in 2009:

> 5. The owner or owners of the surface estate in the land in or under which the mineral interest is located who succeeds to the ownership of a mineral interest upon its lapse under this chapter is entitled to record a statement of succession in interest indicating that that owner or owners of the surface estate in the land in or under which the mineral interest is located has succeeded to the ownership of the mineral interest.
>
> 6. To constitute a reasonable inquiry as provided in subsection 2, the owner or owners of the surface estate or the owner's authorized agent must conduct a search of:
>
>> a. The county recorder's records for the existence of any uses as defined in section 38-18.1-03 by the owner of the mineral interest;
>>
>> b. The clerk of court's records for the existence of any judgments, liens, or probate records which identify the owner of the mineral interest;
>>
>> c. The social security death index for the last-known residence of the owner of the mineral interest, if deceased; and

> d. One or more public internet databases to locate or identify the owner of the mineral interest or any known heirs of the owner. The owner or owners of the surface estate are not required to conduct internet searches on private fee internet databases.

N.D.C.C. § 38-18.1-06 (2009).

The Defendants contend that the clear purpose of the 2009 amendment that added subsection (6) was to clarify existing law, and as such, may be considered when construing rights under the original statute. The Plaintiffs contend that the 2009 amendments should not be applied retroactively. It is undisputed that the Plaintiffs did not comply with N.D.C.C. § 38-18.1-06(6).

Section 38-18.1-08 of the North Dakota Dormant Minerals Act provides that "this chapter is both prospective and retrospective in its application." While the North Dakota Dormant Minerals Act, N.D.C.C. chapter 38-18.1, may be applied retroactively, the North Dakota Legislative Assembly adopted section 38-18.1-08 in 1983 and added subsection (6) of section 38-18.1-06 in 2009. "[I]t is presumed [that] a legislative enactment is intended to change existing law. However, when the clear purpose of an amendment to a statute is to merely clarify existing law, the policy expressed in the amendment may be considered when construing rights under the original statute." Scott v. N.D. Workers Comp. Bureau, 587 N.W.2d 153, 156-57 (N.D. 1998) (internal citations omitted). The North Dakota Legislative Assembly in 1983 could not have intended a "reasonable inquiry" to include everything in subsection (6) since public internet databases did not exist in 1983. Further, the North Dakota Supreme Court in 1999 opined that an extensive search of social security records is not or should not be necessary to meet the "reasonable inquiry" requirement under N.D.C.C. § 38-18.1-06(2). Spring Creek Ranch, LLC v. Svenberg, 595 N.W.2d 323, 328 n.1 (N.D. 1999).

The Plaintiffs further contend that they, Connie Longmuir, and Wade Enget took a literal approach to the statute which stated: "if the address of the mineral interest owner is shown of record <u>or</u> can be determined upon reasonable inquiry, notice must also be made by mailing a copy of the notice to the owner of the mineral interest . . . ." N.D.C.C. § 38-18.1-06(2) (2005) (emphasis added). The Plaintiffs assert that they had to <u>either</u> use the address shown of record <u>or</u> determine the address upon a reasonable inquiry. However, in order to obtain a judgment in quiet title, the owner of the surface estate is required to submit evidence to the district court establishing that all procedures required by the North Dakota Dormant Minerals Act were properly completed <u>and</u> that a reasonable inquiry was conducted. <u>See</u> N.D.C.C. § 38-18.1-06.1(2) (2009). Both the Plaintiffs and the Defendants are seeking a judgment in quiet title for the mineral rights.

The Defendants contend that the Plaintiffs failed to conduct a search "of record" for current addresses and thus did not strictly adhere to statutory requirements. The Plaintiffs argue that a search of the records in the Mountrail County Recorder's office was all that was required.

Stephen Morris, the Plaintiffs' expert witness, opined that the Plaintiffs "had no duty to search beyond the Mountrail County Courthouse records in the Recorder, Clerk of District Court and Treasurer's offices." <u>See</u> Case No. 4:09-cv-028, Docket No. 19-3, p. 31; Case No. 4:09-cv-029, Docket No. 18-3, p. 31. In comprising her title reports for the Plaintiffs, Connie Longmuir searched the county recorder's office, but she did not search the county clerk's or treasurer's offices. Wade Enget sent the Notices of Lapse of Mineral Rights to the addresses of the mineral interest owners listed in Longmuir's title reports. Longmuir has since conducted a search of the Mountrail County Treasurer's and Clerk of District Court's offices and declared there are no records in those offices in the names of Ben Barnett or his estate, Joe Worsham or his estate, or Satkin Corporation. <u>See</u>

Case No. 4:09-cv-028, Docket No. 25; Case No. 4:09-cv-029, Docket No. 24. Longmuir declares that she did not search those two offices when preparing the title reports for the Plaintiffs because there reasonably was nothing in those offices to find. According to Longmuir, there was nothing in the recorder's office that would trigger an inquiry into the clerk of court's office. The Plaintiffs assert that North Dakota does not tax severed mineral interests so there was no need to check the treasurer's office.

The Defendants argue that the Plaintiffs failed to make a reasonable inquiry to ascertain the addresses of the mineral interest owners under N.D.C.C. § 38-18.1-06(2). The Plaintiffs contend that they complied with the notice requirements under the North Dakota Dormant Minerals Act.

The North Dakota Supreme Court in Spring Creek Ranch held that the service of the notice of lapse under N.D.C.C. § 38-18.1-06(2) is similar to the personal service requirement under Rule 4(e)(2)(A) of the North Dakota Rules of Civil Procedure. Both "require a person using publication to conduct an inquiry that is 'reasonable' or 'diligent' under the circumstances." Spring Creek Ranch, 595 N.W.2d at 328. Whether an inquiry is reasonable under the circumstances is a question of fact unless "a reasonable person could not have made more than one conclusion from the evidence." Id.

In Spring Creek Ranch, the surface owner argued that a search of the records in the county register of deeds office was the only search necessary to satisfy the statutory "reasonable inquiry" requirement as a matter of law, even though there was evidence that the surface owner made an inquiry of the county sheriff, auditor, treasurer, and register of deeds. Id. at 327. The successors of the mineral interest owners contended that a "reasonable inquiry" requires more as a matter of law. The mineral interest owners' addresses that were listed in the county register of deeds office

were merely the city and state – no street address. The North Dakota Supreme Court held that "[w]hether [the surface owner] made a reasonable inquiry to ascertain the addresses of the mineral interest owners is a material fact necessary to the ultimate decision whether [the surface owner] strictly complied with N.D.C.C. chapter 38-18.1." Id. at 328-29. The trial court's summary judgment was reversed and remanded because the North Dakota Supreme Court found that reasonable minds could differ when deciding whether the surface owner's inquiry was reasonable. Id. at 329.

The Defendants argue that if all that is required is a letter to the last address of record at the county recorder's office, the North Dakota Dormant Minerals Act would be unconstitutional in that it deprives the Defendants of their property without due process of law. State statutes are presumed constitutional, and the party challenging the constitutionality bears the burden to show otherwise. Branson v. O.F. Mossberg & Sons, Inc., 221 F.3d 1064, 1065 n.4 (8th Cir. 2000) (citing Fitz v. Dolyak, 712 F.2d 330, 333 (8th Cir. 1983)).

The United States Supreme Court held that a similar state statute, the Indiana Dormant Mineral Interests Act, was constitutional in Texaco, Inc. v. Short, 454 U.S. 516 (1982). Under the Indiana statute, a severed mineral interest that is unused for twenty years automatically lapses and reverts to the current surface owner of the property, unless the mineral owner files a statement of claim in the local county recorder's office. Ind. Code § 32-23-10-2 (2002), formerly Ind. Code § 32-5-11-1 (1971) (emphasis added). The Court held that "[t]he State surely has the power to condition the ownership of property on compliance with conditions that impose such a slight burden on the owner while providing such clear benefits to the State." Texaco, 454 U.S. at 529-30. The

North Dakota Dormant Minerals Act differs from the Indiana Dormant Mineral Interests Act in that North Dakota includes a notice requirement. N.D.C.C. § 38-18.1-06.

The Defendants contend that the standard applied in Texaco should not be applied in this case, and instead the North Dakota Dormant Minerals Act requires application of the standard set forth in Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306 (1950). At issue in Mullane was whether the New York Banking Law's notice requirements were constitutional. Under the New York Banking Law, a trustee of a common trust fund was only required to give the beneficiaries of the trust notice by newspaper publication. The United States Supreme Court in Mullane held, "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane, 339 U.S. at 314. The Court said:

> It is true that publication traditionally has been acceptable as notification supplemental to other action which in itself may reasonably be expected to convey a warning. The ways o[f] an owner with tangible property are such that he usually arranges means to learn of any direct attack upon his possessory or proprietary rights. . . . A state may indulge the assumption that one who has left tangible property in the state either has abandoned it, in which case proceedings against it deprive him of nothing, or that he has left some caretaker under a duty to let him know that it is being jeopardized. . . . As phrased long ago by Chief Justice Marshall . . . 'It is the part of common prudence for all those who have any interest in (a thing), to guard that interest by persons who are in a situation to protect it.'

Id. at 316 (internal citations omitted). The Court emphasized that there was no abandonment in Mullane and the trustee possessed the names and addresses of the known beneficiaries. The Court found the beneficiaries "might reasonably expect . . . word might come to them personally that steps were being taken affecting their interests." Id. at 318. The notice required by the New York Banking Law was deficient "not because in fact it fail[ed] to reach everyone, but because under the

11

circumstances it [was] not reasonably calculated to reach those who could easily be informed by other means at hand." Id. at 319.

The United States Supreme Court in Texaco discussed the Mullane decision and held that "[t]he reasoning in Mullane is applicable to a judicial proceeding brought to determine whether a lapse of a mineral estate did or did not occur, but not to the self-executing feature of the Mineral Lapse Act." Texaco, 454 U.S. at 535. The appellants in Texaco contended that the lack of specific notice prior to the lapse of a mineral right rendered the self-executing feature of the Indiana statute ineffective. The Texaco Court disagreed, pointed out that minerals are tangible interests, and found that it was sufficient for "the State to indulge in the assumption that – if no statutory use is made in a 20-year period and no statement of claim is filed in the 2-year grace period, if applicable – the mineral owner has abandoned the property." Id. at 535 n.28.

Pursuant to the North Dakota Dormant Minerals Act, "Any mineral interest is, if unused for a period of twenty years immediately preceding the first publication of the notice required by section 38-18.1-06, deemed to be abandoned, unless a statement of claim is recorded in accordance with section 38-18.1-04. . . ." N.D.C.C. § 38-18.1-02. The reasoning in Mullane does not apply when determining whether the Defendants abandoned their mineral interests, because this is a self-executing feature of the North Dakota Dormant Minerals Act. Texaco, 454 U.S. at 535-36.

The Defendants do not contend that the North Dakota Dormant Minerals Act is unconstitutional per se, but rather that the notice requirements in N.D.C.C. § 38-18.1-06 must be interpreted in a manner to render it constitutional. In Mullane, the United States Supreme Court found the New York Banking Law, which required notice by newspaper publication only, to be unconstitutional because it deprived known beneficiaries of their trust property without due process

of law. In Texaco, the United States Supreme Court found the Indiana Dormant Mineral Interests Act, which did not require the surface owners to provide any notice to the mineral interest owners, constitutional.

Regardless of whether the Court applies the Texaco or the Mullane reasoning, the North Dakota Dormant Minerals Act does not deprive mineral interest owners of their property without due process of law. The North Dakota Dormant Minerals Act requires more than both statutes at issue in Mullane and Texaco. It requires that notice be given by newspaper publication and by mail "if the address of the mineral interest owner is shown of record or can be determined upon reasonable inquiry." N.D.C.C. § 38-18.1-06(2) (2005). The circumstances surrounding this case are different than those in Mullane. In Mullane, the New York Banking Law merely required notice by publication even though the trustee possessed the addresses of the known beneficiaries. In the present case, there is no allegation that the Plaintiffs possessed the correct addresses of the Defendants but merely chose to send the notices to the addresses listed in the recorder's office. Instead, the Plaintiffs contend that they conducted a "reasonable inquiry" under the circumstances.

There is a material question of fact as to what constituted a "reasonable inquiry" under the circumstances. Longmuir declared that there was no need to check the county treasurer's and clerk of court's offices in this case, while the Defendants assert that the failure to check those offices was, in and of itself, enough to show that the Plaintiffs did not conduct a "reasonable inquiry." In 1999, the North Dakota Supreme Court specifically held that what constitutes a "reasonable inquiry" to ascertain the mineral interest owners' addresses is generally a material question of fact. At this stage, the Court is not going to decide, as a matter of law, what constitutes a "reasonable inquiry."

### III.    CONCLUSION

The law in effect at the time the Plaintiffs sent the notices did not define a "reasonable inquiry."  The Court finds that reasonable minds could differ as to whether the Plaintiffs or an agent of the Plaintiffs conducted a "reasonable inquiry" as required under N.D.C.C. § 38-18.1-06(2) (2005).  For the reasons set forth above, the Defendants' motions for summary judgment (Case No. 4:09-cv-028, Docket No. 18; Case No. 4:09-cv-029, Docket No. 17) are **DENIED**.

**IT IS SO ORDERED**.

Dated this 18th day of June, 2010.

*/s/  Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court